UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LINDA M. JOYCE,

                Plaintiff,

-vs-                                        Case No.  5:06-cv-339-Oc-10GRJ

JOHN E. POTTER, POSTMASTER
GENERAL, in his official capacity, and
UNITED STATES POSTAL SERVICE,

                Defendant.
_____

## O R D E R

This case is before the Court for consideration of the Plaintiff's Application for Attorney's Fees and Expenses under the Equal Access to Justice Act (Doc. 23), to which the Defendant has responded (Doc. 26).  The Plaintiff's application is ripe and is due to be granted in part and denied in part.

### Background & Facts

The Court summarized many of the pertinent facts in a previous Order:

> The Plaintiff is a U.S. Postal Service box delivery contractor, and currently holds two U.S. Postal Service contracts for the delivery of the mail.  The Plaintiff is not an employee of the U.S. Postal Service.  However, the Plaintiff personally performs one of the delivery contracts and employs a third party to perform the other contract.

In 1997, the Plaintiff was the subject of a U.S. Postal Service investigation concerning the alleged rifling of a package. Although she was suspended for approximately one month during the investigation, the Plaintiff was allowed to regain access to the mail and personally perform one of her contracts until June 30, 2006. On that date, the Plaintiff received a letter from the U.S. Postal Service suspending the Plaintiff from access to the mail because she "was the subject of an Inspection Service investigation." Although it was not stated in the letter, it is undisputed that the investigation underlying the Plaintiff's current suspension is the 1997 investigation.

On July 7, 2006, the date the Plaintiff received the letter of suspension, she sent a response to the Postal Service Inspector handling her suspension, and explained that the she was cleared of any wrongdoing concerning the 1997 incident and was reinstated following her 1997 suspension. The Plaintiff alleges that she was orally informed that her appeal of her suspension would not be granted because she did not include the statement, "I hereby appeal" in her July 7 letter. Accordingly, the Plaintiff sent a letter dated July 29, 2006, again contesting her suspension, and including the declaration, "I hereby appeal."

The Inspection Service issued its official denial of the Plaintiff's appeal via a letter dated September 1, 2006. In its letter of denial, the Inspection Service stated that "it would be inconsistent with U.S. Postal Service security interests to grant you a security clearance." The denial was based upon the existence of the 1997

>investigation as well as a 1997 letter from the Plaintiff's supervisor issued in conjunction with the investigation that recommended that the Plaintiff not be allowed to hold a U.S. Postal Service contract in the future.  Thus, as a result of the Inspection Service's determination to revoke her security clearance, the Plaintiff has been restricted from access to non-public areas of the post office and from access to the mail, preventing her from personally performing the delivery contracts she holds.  The Plaintiff still holds two contracts, but is now required to hire someone to perform the contract that she had previously personally performed.
>
>On September 21, 2006, the Plaintiff filed the Verified Complaint for Injunctive Relief, alleging three counts, titled "Due Process Violations" (Count I), "Liberty and Property Interest Violations" (Count II), and "De Facto Disbarment" (Count III).  On the same date, the Plaintiff filed her motion for a preliminary injunction, seeking an injunction: "(1) declaring that the Inspection Service's suspension and withdrawal of Joyce's access to the mail is invalid and in violation of her due process rights; (2) rescinding the Inspection Service's June 30, 2006 and September 1, 2006 letters denying Joyce access to the mail; and (3) granting further relief to Joyce as the Court deems just and equitable."

October 16, 2006 Order at 1-3 (Doc. 13).

In its Order entered October 16, 2006, the Court granted in part the Plaintiff's motion for a preliminary injunction.  Entering an injunction against the Defendant after balancing all of the appropriate factors, the Court's findings included that "the Plaintiff has carried her

burden to persuade the Court that she has a substantial likelihood of success on the merits of a claim for the deprivation of her <u>liberty</u> interest in her reputation without due process of law." October 16, 2006 Order at 4 (Doc. 13) (emphasis in original).  The specific relief ordered by the Court was as follows:

> (2) That the Defendant is hereby ENJOINED and DIRECTED, within ten days of the entry of this order, to rescind its letter dated September 1, 2006, denying plaintiff Linda Joyce's appeal of the suspension letter dated June 30, 2006.
>
> (3) That the Defendant is hereby further ENJOINED and DIRECTED, within thirty (30) days of the entry of this order, to reconvene a meeting of its Security Review Committee ("SRC") upon written notice to plaintiff, transmitted not less than seven days before the meeting, and to permit plaintiff both to appear at the meeting (with counsel if she so chooses) and to present argument directed to the merits of plaintiff's appeal. The SRC shall consider the appeal <u>de novo</u> and, within seven days after its meeting, shall render its decision in writing, setting forth a brief explanation of the reasons for its decision.  If plaintiff or her counsel or both wish to participate in the SRC proceeding by telephone, then they may do so by providing the necessary contact numbers to counsel for defendant, Mr. Zimmerman, reasonably in advance of the proceeding.
>
> (4) No later than 45 days after entry of this order, the parties SHALL FILE a joint, written notice of the status of plaintiff's administrative appeal and this civil litigation.
>
> (5) Except as set forth above, the Court makes no order with respect to plaintiff Linda Joyce's security clearance, if any, or her access or lack of access to the mails during the renewed pendency of her administrative appeal.

October 16, 2006 Order at 7-8 (Doc. 13).

On October 20, 2006, the Defendant sent to the Plaintiff a letter in which the Defendant stated that: "In accord with the Court Order of October 16, 2006, this is to inform you that the September 1, 2006 letter denying your security clearance is rescinded.  Your security clearance will be newly considered as ordered by the court."  On that same day -

4

which was a mere four days after the Court entered its Order directing that the Defendant rescind the September 1, 2006 letter and reconsider <u>de</u> <u>novo</u> the Plaintiff's appeal - the Defendant sent an email to the Plaintiff that stated as follows:

> The Postal service would like to return Ms. Joyce to work, with restoration of security clearance, immediately or as soon as practicable. To the extent that she wants her name cleared, we can enter into a satisfactory stipulation or make other appropriate arrangements, ensuring that the matter of the blue box is put to rest. In consideration of same, plaintiff would dismiss the case, each side to bear its own fees and costs.

October 20, 2006 Email from Warren Zimmerman to David Hendel. On October 23, 2006, the Plaintiff responded with a lengthy email summarizing the evidence in support of her claims and refusing the Defendant's proposal to return the Plaintiff to work in exchange for a waiver of her statutory right to seek attorney fees.

In a letter dated October 30, 2006, the Defendant reinstated the Plaintiff's security clearance:

> Reference is made to your appeal of your security clearance denial, as well as to the rescission of that denial by letter dated October 20, 2006.
>
> Based on the totality of the circumstances surrounding the denial, the Agency has determined that your security clearance will be and hereby is granted.
>
> Further, it is determined that the 1997 incident regarding an opened package at your case does not and will not provide cause for the U.S. Postal Service (USPS) to deny you a security clearance in the future or grounds to deny you a Highway Contract Route (HCR). Of course, all other applicable rules and regulations regarding the procurement, awarding, and administration of HCRs remain in effect.

October 30, 2006 Letter from Shaun M. O'Hara (Assistant Inspector in Charge) to Linda M. Joyce.

On November 15, 2006, the Defendant filed - and the next day the Court granted - an uncontested motion in which the Defendant requested a 15-day extension of the deadlines set forth in the Court's October 16, 2006 Order.  In that motion, the Defendant recited that it rescinded the revocation of the Plaintiff's security clearance, restored her security clearance, returned her to work under her contract, and assured her that the matter of the rifled blue box and the investigation arising therefrom will not now or hereafter be a barrier to Plaintiff's holding a security clearance.

On November 28, 2006, the Defendant filed a motion to dismiss as moot.  The Plaintiff, however, opposed the motion to dismiss, and asserted that absent a judicially enforceable consent decree, the Plaintiff is in danger of the U.S. Postal Service again arbitrarily revoking her security clearance due to the alleged1997 incident concerning the rifled blue box.  The Plaintiff sought a consent decree stating that:"The matter of the rifled blue box and the investigation arising therefrom will not now or hereafter be a barrier to plaintiff's holding a security clearance."  Plaintiff's Opposition at 2 (Doc.17).  In an Order entered December 18, 2006, the Court granted the motion to dismiss as moot and found that this action no longer presented a case or controversy under Article III.  The Court reasoned as follows:

> As stated by the Court in its October 16, 2006 Order: "In a case such as this, where a plaintiff is seeking relief from the deprivation of a liberty interest in reputation without due process of law due to the revocation of a security clearance, the typical remedy is the provision of a 'name-clearing' hearing."  The U.S. Postal Service has not only provided the Plaintiff with an opportunity for such a hearing, it has reinstated her security clearance and assured her that the matter of the rifled blue box and the investigation arising therefrom will not now or hereafter be a barrier to the Plaintiff

> holding a security clearance.  As such, the Plaintiff cannot establish that she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." DeFunis, 416 U.S. at 316. Moreover, the United States Attorney and the United States Postal Inspection Service has provided sufficient assurances to both the Court and the Plaintiff to convince the Court that there is no reasonable expectation that the alleged wrong in this case - the deprivation of the Plaintiff's liberty interest in reputation without due process of law due to the revocation of her security clearance - will be repeated.

December 18, 2006 Order at 4-5 (Doc. 18).

This action is now before the Court upon the Plaintiff's application for EAJA attorney fees and costs.  That Plaintiff asserts not only that she is entitled to such fees as a prevailing party, but also that she is entitled to fees at the market rate due to the bad of faith of the Defendant.  The Defendant has objected to every aspect of the Plaintiff's application.

## **Discussion**

The Plaintiff has moved for EAJA attorney fees pursuant to 28 U.S.C. § 2412(b) and, in the alternative, 28 U.S.C. § 2412(d).  Implicit and necessary to an award of fees under either subsection of § 2412 is a determination that the party requesting those fees is a "prevailing party" for purposes of the fee-shifting statute.  Only after the Court has deemed a party to have prevailed may the Court turn to the questions of bad faith and substantial justification.

*Prevailing Party*

The Plaintiff is the prevailing party in this case. The Supreme Court has explained that a prevailing party "is one who has been awarded some relief by the court." Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res., 532 U.S. 598, 604-05 (2001) (The Court stressed the need for "judicial imprimatur" or "judicial relief" and stated that prevailing party status can be found when there "is a court-ordered change [in a] legal relationship between [the plaintiff] and the defendant."); Bryant v. MV Trans., Inc., 231 F.R.D. 480, 481-82 (E.D. Va. 2005) ("Clearly, Buckhannon requires some role of the court in the resolution of an action in order to judicially determine who prevailed in that action."); see also Peek-a-boo Lounge v. Manatee County, 2006 WL 1151974, * 1 (M.D. Fla. April 28, 2006) ("[I]n order to qualify as a 'prevailing party' under a fee shifting statute, a plaintiff must have obtained a court-ordered change in the legal relationship between the plaintiff and the defendant.") (citations omitted). Following the Supreme Court, the Eleventh Circuit articulated a two-prong test for determining whether a litigant is a prevailing party; "there must be (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." Smalbein v. City of Daytona Beach, 353 F.3d 901, 905 (11th Cir. 2003) (quoting Buckhannon, 532 U.S. at 604-05).

Here, the Court granted the Plaintiff's motion for preliminary injunction, and directed and enjoined the Defendant to rescind the letter denying the Plaintiff's appeal of the

8

revocation of her security clearance.  The Court also directed and enjoined the Defendant to hold a hearing to reconsider de novo the issue of that revocation.  Before such a hearing could be arranged, however, the Defendant reconsidered the revocation of the Plaintiff's security clearance.  In fact, after reconsideration, the Defendant not only rescinded the revocation of the Plaintiff's security clearance as ordered by the Court, but also restored the Plaintiff's security clearance, returned her to work under her contract, and assured her that the matter of the rifled blue box and the investigation arising therefrom will not now or hereafter be a barrier to the Plaintiff holding a security clearance.  Now, the Defendant asserts that because it voluntarily took action to moot this case by providing the Plaintiff with all the relief she requested, the Plaintiff has not prevailed.  However, the voluntary actions taken by the Defendant above and beyond the Court's Order do not strip the Plaintiff of her initial victory.  Indeed, the very reason that the Defendant restored the Plaintiff's security clearance and returned her to work is because the Court ordered that the Defendant reconsider de novo its revocation of the Plaintiff's security clearance.  Thus, the preliminary injunction at issue here has the  "judicial imprimatur" necessary to confer prevailing party status upon the Plaintiff.

Further, this case is distinguishable from Sole v. Wyner, – U.S. –, 127 S. Ct. 2188 (June 4, 2007), in which the plaintiff secured a preliminary injunction and was allowed to hold a nude peace protest, but lost at summary judgment when the court ultimately upheld Florida's bathing suit law.  In a narrowly tailored ruling, the United States Supreme Court decided unanimously "only that a plaintiff who gains a preliminary injunction does not

qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her." Id. The Wyner Court found that "the eventual ruling on the merits for defendants, after both sides considered the case fit for final adjudication, superseded the preliminary ruling." Id. Indeed, "Wyner had gained no enduring change in the legal relationship between herself and the state officials she sued." Id. (citing Texas State Teachers Ass'n v. Garland Independent School Dist., 489 U.S. 782 (1989)) (internal quotations omitted). Here, the Defendant did not secure an eventual ruling on the merits and the preliminary injunction was not superseded by a later ruling unfavorable to the Plaintiff. To the contrary, the Court made an enduring change in the legal relationship of the parties by ordering the rescission of the letter denying the Plaintiff's appeal and reconsideration of that appeal. The fact that on reconsideration of her appeal the Plaintiff obtained a favorable outcome that mooted her remaining claims does not somehow undue her victory.

## *§ 2412(d) - Substantial Justification*

The EAJA also provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d). Pursuant to §

2412(d), absent special circumstances attorney fees shall not be awarded in excess of a rate of $125 per hour.

A district court may in its discretion award attorney fees to a prevailing plaintiff pursuant to the EAJA, 28 U.S.C. § 2412(d), upon a finding that the Government's position was not substantially justified, i.e. "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  In making that discretionary reasonableness assessment, the Court may look to factors such as: (1) the state at which the litigation was resolved; (2) views expressed by other courts on the merits; (3) the legal merits of the government's position; (4) the clarity of the governing law; (5) the foreseeable length and complexity of the litigation; and (6) the consistency of the government's position. Jean v. Nelson, 863 F.2d 759, 767 (11th Cir. 1988) (citing Pierce v. Underwood, 457 U.S. 552 (1988); Haitian Refugee Center v. Meese, 791 F.2d 1489 (11th Cir. 1986)).

Here, several factors weigh in favor of a determination that the Defendant's position - i.e. the defense of the summary denial of the Plaintiff's appeal of the revocation of her security clearance - in this litigation was not substantially justified.  The evidence before the Court clearly establishes that the Plaintiff would have prevailed on the merits of her claim for the deprivation without due process of law of her liberty interest in her reputation.[1]

---

[1] The Defendant concedes that its position at the outset of the litigation opposing the Plaintiff's due process claim regarding a liberty interest was premised on the "too broad" assertion that Siegert v. Gilley, 500 U.S. 226 (1991) stood for the proposition that "the interest in one's reputation is not protected by the Due Process Clause."  Defendant's Opposition at 21-22 (Doc. 26).  The Court in Siegert actually stated that "injury to reputation by itself [is] not a protected
(continued...)

Moreover, the Defendant's opposition to providing the Plaintiff the process she was due - here, at minimum, a name-clearing hearing - was not reasonable, especially in light of the Defendant's swift reversal of its position on reconsideration of the Plaintiff's appeal. Further, the Court finds no special circumstances that would make an award of attorney fees unjust.

Indeed, the Court is convinced that this entire litigation could have easily been avoided had the Defendant simply considered the merits of the Plaintiff's appeal.[2] Prior to the Plaintiff filing the Complaint, she expended significant effort attempting to have the Defendant reconsider its denial of her appeal. In so doing, the Plaintiff provided the Defendant with all of the evidence now before the Court; there is no suggestion that the proceedings before this Court led to the discovery by, or communication to, the Defendant of any additional facts supporting the Plaintiff's position regarding the revocation of her security clearance. Despite her efforts, the Plaintiff and her counsel were met at all passes by bureaucratic stonewalling. Finally, the Plaintiff filed her Complaint and sought the entry of a preliminary injunction. A mere four days after the Court granted that

---

[1](...continued)
'liberty' interest." Siegert, 500 U.S. at 223 (emphasis added). As explained in previous Orders, this case does not involve injury solely to reputation, but instead clearly involves a contemporaneous stigma and economic harm sufficient to trigger due process protections.

[2] "The primary purpose of the EAJA is 'to ensure that [private parties] will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights.'" Maritime Mgmt., Inc. v. United States, 242F.3d 1326, 1333 (11th Cir. 2001) (quoting H.R. Rep. No. 99-120, at 4 (1985), reprinted in 1985 U.S.C.C.A.N. 132, 132-33.).

injunction, the Defendant communicated to the Plaintiff that she had been cleared to return to work and her security clearance would be reinstated. There is no indication that the proceedings in this case served any other purpose than to get the attention of the Defendant and have it consider the merits of the Plaintiff's appeal. Indeed, in the end, it appears to the Court that in order to receive the relief she requested the Plaintiff required only the most minimal due process - the mere consideration of the merits of her appeal.

The Plaintiff is entitled to a fee for all time reasonably expended during the successful litigation, especially, as here, where counsel obtained exceptional results. See Hensley v. Eckhart, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."). Regarding the amount of an appropriate award of attorney fees, the Plaintiff has provided an affidavit and documentary evidence that reflects that her counsel spent a total of 381.2 hours at varying hourly rates not exceeding $350.00, and is requesting a total of $112,369.00 in attorney fees (an average hourly rate of $294.78). See Affidavit of David Hendel; Second Affidavit of David Hendel. The Court finds that the hours presented by the Plaintiff represent time reasonably expended in litigation, however, the Court finds that there are no circumstances in this case that justify an hourly rate exceeding the statutory rate of $125 per hour. Thus, excluding 21.05 hours for which the Court will award fees at the market rate as discussed below, the

Plaintiff is entitled to attorney fees of $45,018.75 (360.15 hours at the statutory rate of $125 per hour).

### *§ 2412(b) - Bad Faith*

Section 2412(b) provides a statutory basis for recovery of attorney fees against the Government pursuant to the bad faith exception to the "American rule" against awarding attorney fees. See, e.g., Maritime Mgmt., Inc. v. United States, 242 F.3d 1326, 1333 (11th Cir. 2001). Section 2412(b) reads as follows:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

§ 2412(b). Bad faith for purposes of § 2412(b) is defined as "vexatious, wanton, or oppressive conduct." See Maritime Mgmt., 242F.3d at 1333. Section 2412(b) provides for the recovery of attorney fees at market rates. See id.

In support of her assertion that the Defendant acted in bad faith during the course of this litigation, the Plaintiff identified several purported examples of bad faith. Of those, the Court finds that only one course of conduct by the Defendant rose to the level of bad faith. As already discussed, shortly after the Court entered the preliminary injunction, the Defendant offered to provide the Plaintiff with all the relief she requested in this action, if only she waive her statutory right to attorney fees. In other words, the Defendant would deem the Plaintiff fit to hold a government security clearance and handle the mail if she

would waive her right to attorney fees in this litigation. In Mendenhall v. NTSB, 92 F.3d 871 (9th Cir. 1996), the court found a similar request for waiver constituted bad faith for purposes of awarding § 2412(b) attorney fees. In Mendenhall, the NTSB made an offer to a pilot suing for reinstatement of his Airline Transport Pilot certificate to restore that certificate if he would waive his right to attorney fees. Id. at 876. The Court found that: "The moment the FAA acknowledged that Mendenhall was qualified to hold an ATP Certificate, the agency was no longer justified in pursuing its action alleging a lack of qualification. The agency's continuation of an action it knew to be baseless, in an effort to coerce the waiver of EAJA fees, is a prime example of 'bad faith.'" Id at 877. Similarly here, once the Defendant had determined that the Plaintiff was qualified for reinstatement of her security clearance and return to work, the unjustified continuation of the proceedings in this case constituted bad faith.

Accordingly, the Court finds it appropriate to award attorney fees at the market rate for hours billed between the date the Plaintiff received the initial offer of reinstatement and the date the Plaintiff received actual notification of reinstatement - October 20, 2006 through November 1, 2006. During that period, the counsel for the Plaintiff billed a total of 21.05 hours at varying hourly rates not exceeding $350.00 per hour, for total attorney fees of $6,478.50 (an average hourly rate of $323.12 per hour).

*Costs*

Federal Rule of Civil Procedure 54(d)(1) states, in pertinent part, that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court

otherwise directs." Here, the Court has already determined that the Plaintiff is the prevailing party. The Plaintiff has provided an affidavit and supporting documentation that evidences total costs of $2,854.64. The Court finds that an undiminished award of costs is appropriate.

## Conclusion

Accordingly, it is hereby ORDERED and ADJUDGED that the Plaintiff's Application for Attorney's Fees and Expenses under the Equal Access to Justice Act (Doc. 23) is GRANTED to the extent that the Plaintiff is awarded a total of $54,351.89, which includes EAJA fees of $45,018.75 pursuant to 28 U.S.C. § 2412(d), EAJA attorney fees of $6,478.50 pursuant to 28 U.S.C. § 2412(b), and costs of $2,854.64, and is DENIED in all other respects.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 16th day of July, 2007.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record